IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA STOKES, | : | |
|     Plaintiff | : | No. 1:22-cv-01136 |
| | : | |
|     v. | : | (Judge Rambo) |
| | : | |
| MORRIS L. HOUSER et al., | : | |
|     Defendants | : | |

**MEMORANDUM**

Pending before the Court are the defendants' motions to dismiss the complaint, filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. Nos. 15, 18.) For the reasons set forth below, the Court will grant the corrections defendants' motion, and the Court will deny the medical defendants' motion. Additionally, the Court will afford Plaintiff the opportunity to file an amended complaint.

**I.    BACKGROUND**

    **A.    Procedural Background**

Plaintiff Joshua Stokes ("Plaintiff") is a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"). (Doc. No. 1 at 2.) He is proceeding pro se and is currently incarcerated at State Correctional Institution Benner ("SCI Benner") in Bellefonte, Pennsylvania. (Id. at 8.)

On July 22, 2022, while incarcerated at SCI Benner, Plaintiff filed a complaint pursuant to the provisions of 42 U.S.C. § 1983 ("Section 1983"). (Id. at 1.) Named

as Defendants are the following six (6) individuals, all of whom appear to have worked at SCI Benner during the period of time relevant to Plaintiff's claims: (1) Superintendent Morris L. Houser ("Houser"); (2) CHCA Head of Medical, Kim Ardery ("Ardery"); (3) Medical Director Laclera ("Laclera"); and Nurses (4) Tiffany Sottile ("Sottile"), (5) Taylor Talasky ("Talasky"), and (6) Meypearl St. George ("St. George").[1]  (Id. at 1, 2–4.)

On that same date, the Court issued a Thirty (30)-Day Administrative Order, directing Plaintiff to either pay the requisite filing fee or file a completed and signed motion for leave to proceed in forma pauperis. (Doc. No. 6.)  In accordance with that Administrative Order, Plaintiff filed a completed and signed motion for leave to proceed in forma pauperis, as well as his prisoner trust fund account statement. (Doc. Nos. 7, 8.)

On September 22, 2022, the Court, inter alia, granted Plaintiff's motion for leave to proceed in forma pauperis, deemed his complaint filed, and directed the Clerk of Court to serve a copy of his complaint on the named Defendants. (Doc. No. 9.) On October 4, 2022, counsel for Defendants Talasky, Laclera, St. George, and Sottile entered his appearance and filed a collective waiver on their behalf. (Doc.

---

[1]  For purposes of this Memorandum, the Court has taken the spelling of the defendants' names from Plaintiff's complaint.  However, based upon the defendants' filings, Plaintiff has incorrectly spelled their names.  Thus, the Court will direct the Clerk of Court to make these spelling changes on the caption of the docket in this case.

Nos. 11, 12.)  Thereafter, on October 21, 2022, counsel for Defendants Ardery and Houser entered his appearance and filed a collective waiver on their behalf.  (Doc. Nos. 13, 14.)  For ease of reference, the Court refers to Defendants Talasky, Laclera, St. George, and Sottile as the "Medical Defendants," and to Defendants Ardery and Houser as the "DOC Defendants."

Subsequently, on November 28, 2022, the Medical Defendants filed a motion to dismiss and supporting brief.  (Doc. Nos. 15, 16.)  And, two (2) days later on November 30, 2022, the DOC Defendants filed a motion to dismiss and supporting brief.  (Doc. Nos. 18, 19.)  As reflected by the Court's docket, Plaintiff has not filed a brief in opposition to either one of those motions, and the time period for doing so has passed.  Thus, the Defendants' pending motions to dismiss are ripe for the Court's resolution.

B. **Factual Background**

In accordance with the legal standard set forth below, the Court accepts the allegations in Plaintiff's complaint as true and draws all reasonable inferences therefrom in the light most favorable to Plaintiff.  See Kedra v. Schroeter, 876 F.3d 424, 434 (3d Cir. 2017).  In addition, the Court heeds the long-standing principle that pro se documents are "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Thus, Plaintiff's pro se complaint, "however inartfully

pleaded," will be held to "less stringent standards than formal pleadings drafted by lawyers[.]" See Haines v. Kerner, 404 U.S. 519, 520 (1972).

On April 14, 2022, Plaintiff was in his cell at SCI Benner when he started experiencing "shortness of breath and chest pains in [his] left neck." (Doc. No. 1 at 5.) "These issues started when [he] was given Medformin [sic] 500GM medications for [being] border line diabetic." (Id.) The "PA nurses lied to [him] about the Medformin [sic] medications not causing side effects on the heart." (Id.) Specifically, Defendants Sottile, Talasky, and St. George did not tell Plaintiff "the truth" about this medication, which causes "heart failure . . . side effects." (Id.) Plaintiff also broadly refers to Defendants Ardery and Laclera and appears to attempt to tie them to such conduct. (Id.)

Additionally, Plaintiff's health issues are "getting worse" because "there [sic] not getting [him] to an out side [sic] hospital to find out the problem in [his] body and what damage [the medication did] on [his] heart." (Id.) Finally, although he was placed in the infirmary for observation on May 23, 2022, he was "kicked out" the following day, even though he had told Defendant Laclera and "the nurses" that he was still experiencing shortness of breath, chest pains, neck pains, dizziness, and issues with his balance. (Id.)

As a result of the foregoing, Plaintiff claims that the "DOC violated the Policy Cod[e] of Ethics 13.02.01 Access to Health Care[.]" (Id. at 6.) He also claims a

4

violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution for "not telling [him] and showing [him] the side effects of the medication that was prescribe[d] to [him]."  (Id.)  As for relief, he seeks: compensation for the "damage" to his mental and physical health; to be taken to a hospital; and for the "medical staff" to stop lying to him about the side effects of the medications that they are prescribing him.  (Id.)

## II.   LEGAL STANDARD

In order to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  And a claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  See Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion, the court "accept[s] as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them."  See Taksir v. Vanguard Grp., 903 F.3d 95, 96-97 (3d Cir. 2018) (citation and internal quotations omitted).  The court also construes the factual allegations "in the light most favorable to the plaintiff[.]"  See In re Ins. Brokerage

5

Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010) (citation and internal quotations omitted). The court, however, is not required to credit "conclusions of law" or to draw "unreasonable factual inferences." See Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc., 450 F.3d 130, 133 (3d Cir. 2006).

Additionally, the United States Court of Appeals for the Third Circuit has outlined a three-step process to determine whether a complaint meets the pleading standard established by Twombly and Iqbal. See Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016). First, the court "must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.'" See id. (quoting Iqbal, 556 U.S. at 675) (alterations in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" See id. (quoting Iqbal, 556 U.S. at 679). And, third, "'[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" See id. (quoting Iqbal, 556 U.S. at 679).

## III.   DISCUSSION

Plaintiff has filed his complaint pursuant to the provisions of Section 1983, claiming that Defendants violated his Eighth Amendment rights while incarcerated at SCI Benner.[2]  (Doc. No. 1.)  Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See 42 U.S.C. § 1983.  Thus, "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." See Shuman v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted).  Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." See id. (citation omitted).

---

[2]  Plaintiff's non-constitutional claim that Defendants violated "Policy Cod[e] of Ethics 13.02.01 Access to Health Care" (Doc. No. 1 at 6) is not actionable under Section 1983, as currently pled, since an alleged violation of DOC policy does not in itself create a constitutional right.  See, e.g., Lewis v. Sec'y of Pub. Safety & Corr., 870 F.3d 365, 369 (5th Cir. 2017) (explaining, in the context of a Section 1983 suit, that "a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right" (footnote omitted)).

Additionally, in order to plausibly state a claim under Section 1983, Plaintiff must allege that each defendant was personally involved in the act or acts that he claims violated his federally protected rights. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (citing Rode, 845 F.2d at 1207); Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting Rode, 845 F.2d at 1207)).

### A.   The DOC Defendants' Motion to Dismiss

The DOC Defendants argue that the complaint fails to plausibly allege that they were personally involved in any of the asserted misconduct underlying Plaintiff's Eighth Amendment claim. (Doc. No. 19.) As a result, the DOC Defendants argue that they should be dismissed for lack of personal involvement. (Id.) The Court, having carefully reviewed the allegations in the complaint, agrees.

Although the DOC Defendants have been named in the caption of the complaint (Doc. No. 1 at 1) and have also been listed as Defendants in the "DEFENDANT(s)" section of the complaint (id. at 2–3), there is a complete absence of specific, factual allegations throughout the body of the complaint that would give

8

rise to a plausible inference that they had any personal involvement in the asserted deprivation of Plaintiff's Eighth Amendment rights. Indeed, while the complaint makes a broad reference to Defendant Ardery (id. at 5), this broad reference does not establish that Defendant Ardery participated in, directed, or knew of and acquiesced in Plaintiff's medical treatment at SCI Benner. Moreover, the law is clear that a Section 1983 plaintiff "may not rely solely on a respondeat superior theory of liability" in asserting an Eighth Amendment claim. See Dooley, 957 F.3d at 374 (citing Rode, 845 F.2d at 1207).

Accordingly, for all of these reasons, the Court concludes that the complaint fails to state a Section 1983 claim upon which relief can be granted against the DOC Defendants. As a result, Plaintiff's Eighth Amendment claim against the DOC Defendants will be dismissed.

### B. The Medical Defendants' Motion to Dismiss

The Medical Defendants argue that the complaint fails to plausibly allege that Defendant Laclera was personally involved in any of the asserted misconduct underlying Plaintiff's Eighth Amendment claim. (Doc. No. 17.) The Medical Defendants further argue that the complaint fails to plausibly allege that Defendants Sottile, Talasky, and St. George acted with any deliberate indifference to Plaintiff's serious medical needs, as required to state a claim under the Eighth Amendment.

(Id.) The Court, having carefully reviewed the allegations in the complaint, is unpersuaded.

"The Eighth Amendment . . . prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." See Wilson v. Seiter, 501 U.S. 294, 296– 97 (1991). However, the United States Constitution "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities, are sufficiently grave to form the basis of an Eighth Amendment violation." See Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal citations and quotation marks omitted). Thus, in order "[t]o determine whether prison officials have violated the Eighth Amendment, [courts] apply a two-prong test[.]" See Porter v. Pennsylvania Dep't of Corr., 974 F.3d 431, 441 (3d Cir. 2020) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

Under the first prong, courts consider whether the deprivation was "'objectively, sufficiently serious[,]" that is, whether "a prison official's act or omission [resulted] in the denial of the minimal civilized measure of life's necessities[.]'" See id. (quoting Farmer, 511 U.S. at 834). And, under the second prong, courts must consider whether the prison official was "'deliberate[ly] indifferen[t] to inmate health or safety.'" See id. (quoting Farmer, 511 U.S. at 834).

Regarding the first prong, life's necessities include food, clothing, shelter, medical care, and reasonable safety. See Tillman v. Lebanon Cnty. Corr. Facility,

221 F.3d 410, 418 (3d Cir. 2000) (stating that "when the government takes a person into custody against his or her will, it assumes responsibility for satisfying basic human needs such as food, clothing, shelter, medical care, and reasonable safety" (citing DeShaney v. Winnebago Co. Dep't of Social Svcs., 489 U.S. 189, 199-200 (1989))); Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 256 (3d Cir. 2010) (explaining that the Eighth Amendment imposes a duty upon prison officials "to ensure that inmates receive adequate food, clothing, shelter, and medical care, and [to ensure that prison officials] take reasonable measures to guarantee the safety of the inmates" (citations and internal quotation marks omitted)).

 Regarding the second prong, a prison official does not act with deliberate indifference "unless the official knows of and disregards an excessive risk to inmate health or safety"—that is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." See Farmer, 511 U.S. at 837. "The knowledge element of deliberate indifference is subjective, . . . meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 837-38)).

 In accordance with these standards, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated[,]"

see Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999), and prison officials violate the Eighth Amendment "when they are deliberately indifferent to an inmate's serious medical need." See Dooley, 957 F.3d at 374 (citing Estelle, 429 U.S. at 106); Rouse, 182 F.3d at 197 (explaining that plaintiffs must demonstrate the following two (2) elements: (1) "that the defendants were deliberately indifferent to their medical needs[;]" and (2) "that those needs were serious").

"[T]he concept of a serious medical need, as developed in Estelle, has two components, one relating to the consequences of a failure to treat and one relating to the obviousness of those consequences." See Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991). The "condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death[,]" and "the condition must be one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." See id. (citation and internal quotation marks omitted).

The concept of "deliberate indifference" requires that the prison official actually knew of and disregarded "an excessive risk to inmate health or safety[.]" See Farmer v. Brennan, 511 U.S. 825, 837 (1994). The Third Circuit has found deliberate indifference when a "prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary

medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." See Rouse, 182 F.3d at 197 (citation omitted).

As stated above, Defendant Laclera argues that the complaint fails to state his personal involvement, and Defendants Sottile, Talasky, and St. George argue that the complaint fails to state their deliberate indifference. (Doc. No. 17.) The Medical Defendants further argue that the complaint, "at best[,]" presents a disagreement with the medical care that was provided to Plaintiff. (Id. at 5; id. at 7.) The Court disagrees.

The complaint alleges: that Plaintiff was prescribed "Medformin [sic] 500GM medications for [being] border line diabetic[;]" that Defendants Sottile, Talasky, and St. George "lied" to him and did not tell him "the truth" about the side effects of this medication (id.); that, as a result, he experienced "shortness of breath and chest pains in [his] left neck[;]" that his health issues are "getting worse" because "there [sic] not getting [him] to an out side [sic] hospital to find out the problem in [his] body and what damage [the medication did] on [his] heart[;]" and, finally, that he was placed in the infirmary for observation on May 23, 2022, but "kicked out" the following day, even though he had told Defendant Laclera and "the nurses" that he was still experiencing shortness of breath, chest pains, neck pains, dizziness, and issues with balance. (Doc. No. 1 at 5.)

The Court finds that, at this stage of the litigation, Plaintiff's allegations raise a plausible inference of deliberate indifference on the part of the Medical Defendants—i.e., that they <u>lied</u> to him about the side effects of the medication they prescribed him and, further, that when Plaintiff experienced negative side effects from the medication and brought it to their attention, they disregarded his medical needs. The Court further finds that, because Defendants have not squarely addressed these allegations in connection with their motion to dismiss, they have not met their burden of showing that no deliberate indifference has been stated here. <u>See</u> <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1409 (3d Cir. 1991) (explaining that, "under Rule 12(b)(6)[,] the defendant has the burden of showing no claim has been stated"); <u>Johnsrud v. Carter</u>, 620 F.2d 29, 33 (3d Cir. 1980) (concluding that the district court committed reversible error where it had "shifted to the plaintiffs the burden which properly was the Government's on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and deprived the plaintiffs of the procedural safeguards to which they were entitled").

Moreover, even if the Medical Defendants had squarely addressed these allegations, their arguments would still fail. In particular, the Court finds that the Medical Defendants' arguments rely upon facts and evidence extraneous to Plaintiff's complaint. <u>See, e.g.</u>, (Doc. Nos. 17 (arguing facts not included in the complaint); 17-1 through 17-3 (attaching, <u>inter</u> <u>alia</u>, Plaintiff's medical records to

14

their supporting brief, which are not attached to the complaint)).

As a general proposition, however, when the Court is "ruling on a motion to dismiss, it "may not consider matters extraneous to the pleadings." See Doe v. Princeton Univ., 30 F.4th 335, 342 (3d Cir. 2022) (citation and internal quotation marks omitted). And, here, the facts that are relied upon by the Medical Defendants, and the exhibits that they have submitted in connection with their motion to dismiss, have not been specifically cited in the complaint or attached to the complaint. See Mayer, 605 F.3d at 230 (explaining that, when ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents" (citation omitted)). As a result, the Court cannot say that these extraneous documents, or the assertions that are contained in these extraneous documents, are integral to the complaint.

Accordingly, for all of these reasons, the Court will deny the Medical Defendants' motion to dismiss Plaintiff' Eighth Amendment claim. Plaintiff will, therefore, be permitted to proceed on this claim.

### C. Leave to Amend

The final issue is whether Plaintiff should be granted leave to amend his complaint. Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]" See id. The Court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended, would fail to state a claim upon which relief could be granted." See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

In accordance with this standard, the Court cannot say that granting Plaintiff leave to amend his complaint would be futile and, thus, the Court will grant Plaintiff leave to file an amended complaint in order to attempt to cure the deficiencies

16

identified above. Plaintiff is advised that the amended complaint must be complete in all respects. It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed. The amended complaint shall set forth his claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. Finally, neither conclusory allegations nor broad allegations will set forth a cognizable claim.

However, in the event that Plaintiff would like to forego the filing of an amended complaint and would, instead, like to proceed on his original complaint, as it currently stands, then he will be permitted to do so. If Plaintiff elects to forego the filing of an amended complaint, this action will proceed to discovery.

## IV. CONCLUSION

For all of the foregoing reasons, the Court will grant the DOC Defendants' motion to dismiss (Doc. No. 18), and the Court will deny the Medical Defendants' motion to dismiss (Doc. No. 15). Plaintiff will be afforded the opportunity to file an amended complaint. An appropriate Order follows.

Dated: August 24, 2023               s/ Sylvia H. Rambo
                                     SYLVIA H. RAMBO
                                     United States District Judge